```
                UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF NEW HAMPSHIRE
```

Estate of Aaron Bruce Cadman

    v.                                Civil No. 16-cv-202-AJ
                                        Opinion No. 2018 DNH 018

Stephen Dennis and the
Town of Henniker, New Hampshire


**MEMORANDUM AND ORDER**

In November 2014, Henniker Police Officer Stephen Dennis shot Aaron Bruce Cadman while on duty. The shooting was not fatal, and in May 2016, Cadman filed this action against Dennis and the Town of Henniker ("Town") alleging violations of the Fourth Amendment and state law. Specifically, Cadman alleged federal claims of excessive force against Dennis (Count I) and failure to train and supervise against the Town (Count II), both brought pursuant to 42 U.S.C. § 1983 (Count I); and state-law claims of assault (Count III), battery (Count IV), and negligent use of force (Count V) against Dennis and vicarious liability against the Town (Count VI). The case was assigned to the undersigned magistrate judge, to whose jurisdiction the parties consented. Cadman's estate (the "Estate") was substituted as a party in August 2016, after Cadman died of causes unrelated to the shooting.

Defendants moved for judgment on the pleadings on the state-law claims. The court granted that motion as to the vicarious liability claim against the Town, but denied it without prejudice as to any of the state-law claims against Dennis. With discovery closed, defendants now move for summary judgment on all remaining claims. The Estate concedes that the Town is entitled to summary judgment on Count II, the failure to train and supervise claim, but otherwise objects.

Because Dennis is entitled to qualified immunity on the federal claim and municipal immunity on the state-law claims, the court **grants** defendants' motion for summary judgment.

I. **STANDARD OF REVIEW**

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "If a nonmovant bears the ultimate burden of proof on a given issue, she must present 'definite, competent evidence' sufficient to establish the elements of her claim in order to survive a motion for summary judgment." Pina v. Children's Place, 740 F.3d 785, 795–96 (1st Cir. 2014) (quoting Mesnick v. Gen. Elec. Co., 950 F.2d 816, 822 (1st Cir. 1991)). The court must "draw all reasonable inferences from the record in the light most favorable to the nonmoving party, disregarding any 'conclusory allegations,

2

improbable inferences, or unsupported speculation.'" McGrath v. Tavares, 757 F.3d 20, 25 (1st Cir. 2014) (quoting Alicea v. Machete Music, 744 F.3d 773, 778 (1st Cir. 2014)). Where, as here, the moving party raises a qualified immunity defense, the nonmoving party has the burden of showing that qualified immunity does not apply. See Mitchell v. Miller, 790 F.3d 73, 77 (1st Cir. 2015) (second prong); cf. Lopera v. Town Of Coventry, 640 F.3d 388, 395–96 (1st Cir. 2011) (first prong); Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011).

## II. BACKGROUND

The relevant facts appear to be largely undisputed. On November 26, 2014, Henniker Police Officer Stephen Dennis was on duty in a marked Henniker Police Department ("HPD") cruiser. Doc. no. 24-2 ¶ 7. At just after 5:00 p.m., Merrimack County Dispatcher Danica Gorham called Dennis's cell phone[1] and informed him that dispatch had received a "BOLO" for a vehicle stolen in a "strong arm robbery" (the "vehicle"). Id. ¶ 8. Gorham informed Dennis that the vehicle was being tracked using OnStar and was located on Route 202 in Henniker. Id. Dennis understood that the driver of the stolen vehicle had hit or

---

[1] Gorham called Dennis directly because Merrimack County Dispatch was having communications issues and had lost radio contact. Doc. no. 24-2 ¶ 7.

3

attempted to hit the vehicle's owner and should be considered "armed and dangerous."[2] Id. Only a few miles away, Dennis activated his emergency lights and proceeded to the route. Id. ¶ 9; doc. no. 27-4 at 27.

Traffic was heavy due to snowy conditions. Doc. no. 24-2 ¶ 9; doc. no. 24-5 ¶ 3. While en route, Dennis heard Hillsborough dispatch calls over his radio updating the location of the vehicle. Doc. no. 24-2 ¶ 9. Dennis made contact with a vehicle matching the description of the vehicle in question. Id. Dennis deactivated his emergency lights and contacted Hillsborough dispatch to confirm the license plate of the vehicle. Id.; doc. no. 27-4 at 18. Once confirmed, Dennis reactivated his emergency lights to signal to the driver to pull over. Doc. no. 24-2 ¶ 9.

The driver accelerated and pulled into the oncoming lane of traffic. Id. ¶ 9. Dennis activated his siren and pursued the vehicle. Id. ¶ 10. Traffic was generally moving at around thirty miles-per-hour due to the snow. Doc. no. 24-5 ¶ 3; doc. no. 27-4 at 15. Dennis pursued the vehicle at approximately

---

[2] It is unclear in the record whether Gorham informed Dennis that the suspect was "armed and dangerous" or Dennis arrived at this belief on his own based on the reference to a "strong arm robbery." See doc. no. 24-2 ¶ 8; doc. no. 27-4 at 8, 9, 28. It is similarly unclear whether Gorham instructed Dennis to "use extreme caution." Doc. no. 27-4 at 8, 29.

4

fifty miles-per-hour, but was unable to keep up. Doc. no. 27-4 at 6, 13, 14, 27. While in pursuit, Dennis put a call out over Hillsborough dispatch. Id. at 7.

Dennis was able to maintain visual contact with the vehicle during the pursuit. Doc. no. 24-2 ¶ 10. The vehicle remained in the oncoming lane of traffic. Doc. no. 27-4 at 13. Dennis saw the vehicle spin, indicating that the driver had lost control. Id. at 7; doc. no. 24-2 ¶ 10. As Dennis approached, he observed the vehicle in the middle of the road perpendicular to traffic with the driver's side facing Dennis. Doc. no. 24-2 ¶ 11; doc. no. 27-5. The vehicle had collided with a red pickup truck traveling in the oncoming lane, which had sustained damage and was off to the side of the roadway. Doc. no. 24-2 ¶ 11; doc. no. 27-5. The vehicle had also collided with a black pickup truck, which had come to a stop fifteen-to-twenty feet from the vehicle in the right breakdown lane. Doc. no. 24-2 ¶ 11; doc. no. 24-5 ¶ 4; doc. no. 24-6 ¶ 4. Another car had stopped behind the black pickup truck in the right lane. Doc. no. 24-6 ¶ 6; doc. no. 27-5.

Dennis stopped his cruiser in the roadway approximately level with the red pickup truck. Doc. no. 24-2 ¶ 11; doc. no. 24-6 ¶ 6; doc. no. 27-5. The driver of the stolen vehicle, later identified as Aaron Bruce Cadman, exited the vehicle.

Doc. no. 24-2 ¶ 12; doc. no. 24-6 ¶ 6. Dennis exited his cruiser, unholstered his weapon, and pointed it at Cadman. Doc. no. 24-2 ¶ 13; doc. no. 24-5 ¶ 5; doc. no. 24-6 ¶ 6. Dennis shouted at Cadman to show his hands, but Cadman did not respond. Doc. no. 24-2 ¶ 13; doc. no. 24-6 ¶ 6. Dennis slowly approached Cadman with his weapon drawn, repeatedly shouting at Cadman to show his hands. Doc. no. 24-2 ¶ 13; doc. no. 24-6 ¶ 6. Cadman kept his back to Dennis and started rummaging in the vehicle.[3] Doc. no. 24-2 ¶ 13; doc. no. 24-5 ¶ 6; doc. no. 24-6 ¶ 6. Dennis reached the back of the black pickup truck and shouted multiple times for Cadman to show his hands. Doc. no. 24-2 ¶ 14; doc. no. 24-5 ¶¶ 5, 6; doc. no. 24-6 ¶¶ 6, 7. Cadman kept his back to Dennis and continued to rummage in the driver's side of the vehicle. Doc. no. 24-2 ¶ 14; doc. no. 24-5 ¶ 6; doc. no. 24-6 ¶ 7.

Concerned for the safety of himself and others at the scene, Dennis fired a single shot, striking Cadman in the arm. Doc. no. 24-2 ¶ 15, 16; doc. no. 24-5 ¶ 6; doc. no. 24-6 ¶ 7. Cadman fell to the ground, and Dennis closed the distance and checked Cadman for weapons. Doc. no. 24-2 ¶ 15; doc. no. 24-6 ¶

---

[3] There is conflicting evidence as to whether Cadman at one point looked over his shoulder at Dennis. Compare, e.g., doc. no. 24-2 ¶ 13; doc. no. 24-6 ¶ 7; doc. no. 27-4 at 24 with doc. no. 27-4 at 21.

7. Not finding any, Dennis identified Cadman and began tending to his medical needs. Doc. no. 24-2 ¶ 15; doc. no. 27-4 at 36.

### III. DISCUSSION

The Estate currently has a federal claim pending against Dennis for excessive force, a federal claim pending against the Town for failure to train and supervise, and state-law claims pending against Dennis for assault, battery, and negligent use of force. As noted, however, the Estate concedes that the Town is entitled to summary judgment on the failure to train and supervise claim. Thus, defendants' motion for summary judgment is **granted** as to Count II, leaving Dennis the sole remaining defendant in this action. The court will address the claims against him in turn.

#### A. Excessive Force

The Estate seeks to recover under 42 U.S.C. § 1983 for the use of excessive force in violation of the Fourth Amendment.[4] Dennis contends that he is entitled to summary judgment on this claim because, among other reasons, the doctrine of qualified immunity shields him from suit. As noted above, when the party moving for summary judgment raises qualified immunity as a

---

[4] The complaint also asserts violations of the Fourteenth Amendment, but does not articulate an independent theory under this provision.

defense, the non-movant bears the burden of demonstrating that qualified immunity does not apply.  See Mitchell, 790 F.3d at 77; cf. Lopera, 640 F.3d at 395-96; al-Kidd, 563 U.S. at 735.

Police officers "are entitled to qualified immunity under § 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'"  Dist. of Columbia v. Wesby, ___ S. Ct. ___, 2018 WL 491521, at *10 (Jan. 22, 2018) (citation omitted).  "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand what he is doing is unlawful."  Id. (citation internal quotation marks omitted).[5]  Put differently, "existing law must have placed the constitutionality of the officer's conduct beyond debate."  Id. (citation and internal quotation marks omitted).  "This demanding standard protects all by the plainly incompetent or those who knowingly violate the law."  Id. (citation and internal quotation marks omitted).

---

[5] The court focuses on the "clearly established" prong of the qualified immunity analysis because it is dispositive of the excessive force claim.  See Pearson v. Callahan, 555 U.S. 223, 237 (2009) (noting that it is often preferable to focus on the second prong in cases where "it is plain that a constitutional right is not clearly established by far from obvious whether in fact there is such a right").  The court therefore does not reach whether Dennis's conduct violated the Fourth Amendment.

8

To be clearly established, the legal principle at issue must be "settled law." Id. at *11 (citation omitted). This requires "controlling authority or a robust consensus of cases of persuasive authority" demonstrating that a reasonable officer should have known his conduct was unlawful at the time it occurred. See id. (citation and internal quotation marks omitted). "The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule the plaintiff seeks to apply." Id. (citation omitted). "Otherwise, the rule is not one that every reasonable official would know." Id. (citation and internal quotation marks omitted).

This standard "also requires that the legal principle clearly prohibit the officer's conduct in the particular circumstances before him." Id. When determining whether an officer violated clearly established law, courts must consider:

> (a) whether the legal contours of the right in question were sufficiently clear that a reasonable officer would have understood that what he or she was doing violated the right, and (b) whether in the particular factual context of the case, a reasonable officer would have understood that his or her conduct violated the right.

Fernandez Salicrup v. Figueroa-Sancha, 790 F.3d 312, 325-26 (1st Cir. 2015) (brackets omitted) (quoting Mlodzinski v. Lewis, 648 F.3d 24, 32-33 (1st Cir. 2011)). The Supreme Court has stressed that courts "must not define clearly established rights at a

high level of generality, since doing so avoids the crucial question [of] whether the official acted reasonably in the particular circumstances that he or she faced." Wesby, 2018 WL 491521, at *11 (citations and internal quotation marks omitted). While "there can be the rare 'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances . . . , a body of relevant case law is usually necessary to clearly establish the answer . . . ." Id. (citations and internal quotation marks omitted). In other words, "[a] rule is too general if the unlawfulness of the officer's conduct does not follow immediately from the conclusion that the rule was firmly established." Id. (citations, internal quotations, and brackets omitted).

The Estate does not cite to any authority, controlling or persuasive, addressing the particular circumstances at issue here. But the Estate contends that it does not need to, as this is the "obvious case" where the unlawfulness of Dennis's conduct is clear. To this end, the Estate argues, relying on Tennessee v. Garner, 471 U.S. 1 (1985), that "[i]t has long been established that a police officer may not use deadly force unless a suspect is both fleeing and there is a significant threat of death or serious physical injury to the officer or

others in harm's way."  Doc. no. 27 at 9.  The Estate contends that Cadman "did not attempt to flee and did not make any threatening gestures toward Dennis or others at the scene."  Id. Thus, according to the Estate, it is clear that Dennis's actions violated Cadman's rights.

The court disagrees for several reasons.  First, there is no requirement that a suspect be fleeing in order for deadly force to be justified.  Rather, "[t]he test for whether the use of deadly force is excessive is whether an objectively reasonable officer would believe that the suspect posed a 'threat of serious physical harm either to the officer or others.'"  Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 23 (1st Cir. 2005) (quoting Garner, 471 U.S. at 12). Accordingly, the mere fact Cadman was not fleeing does not, as the Estate appears to suggest, defeat qualified immunity.

The Estate's focus on Cadman's gestures at the scene is similarly at odds with established precedent.  When analyzing the objective reasonableness of an officer's conduct, courts must take into account the "totality of the circumstances." Garner, 471 U.S. at 9.  Here, Dennis was informed that Cadman had committed a "strong arm robbery" and was driving a stolen vehicle.  When Dennis attempt to stop that vehicle, Cadman sped off, driving in excess of fifty miles-per-hour in snowy

11

conditions in the oncoming lane of traffic.  Cadman came to a stop only after colliding with two other vehicles.  After making contact with Cadman, Dennis repeatedly told Cadman to show his hands.  Cadman did not comply, and instead kept his back to Dennis and rummaged in the driver's side of the stolen vehicle.  When considering these facts in their totality, it is by no means obvious that Cadman did not pose a threat of death or serious harm to Dennis or others.

The Estate's reliance on Garner is also misplaced.  The Supreme Court has admonished courts not to rely too heavily on "Garner's general test for excessive force," at least in cases that are not on all fours with the facts presented there.  See Mullenix v. Luna, 136 S. Ct. 305 (2015); Brosseau v. Haugen, 543 U.S. 194, 199 (2004) (per curiam).  In Garner, the Supreme Court held that it was unconstitutional for police to use deadly force to prevent the escape of an unarmed burglary suspect.  471 U.S. at 11.  Those facts bear little resemblance to the case at bar, as even setting aside the discussion in the preceding paragraph, there is no suggestion here that Cadman was trying to flee when Dennis shot him.  Thus, Garner does not support a conclusion that this is an "obvious" case.[6]

---

[6] The Estate's reliance on Whitefield v. Melendez-Rivera, 431 F.3d 1 (1st Cir. 2005), fails for essentially the same reasons.  In Whitefield, the First Circuit held that the

12

Finally, the court is not persuaded by the Estate's arguments with respect to St. Hilaire v. City of Laconia, 71 F.3d 20 (1st Cir. 1995). The Estate cites to that case in support of its contention that a police officer "cannot be the beneficiary of his own conduct in attempting to establish a qualified immunity defense." Doc. no. 27 at 11. St. Hilaire does not support such a broad proposition. See 71 F.3d at 27 ("But at the core of plaintiff's case is not the broad contention that the police have a duty to reduce the risk of violence. . . . Plaintiff instead makes a narrower, more specific claim."). Indeed, the primary issue in St. Hilaire was whether it was clearly established, for qualified immunity purposes, that a police officer violated the Fourth Amendment when he did not identify himself and state his purpose when executing a search warrant on a home. See id. at 26-28. Short of resolving this issue, the First Circuit held that even if such a rule existed, it was not clearly established in 1990, when the underlying incident occurred. Id. at 28. Thus, St.

---

defendants were not entitled to qualified immunity as a matter of law because there was a dispute as to whether the plaintiff was merely running away unarmed at the time he was shot, or had stopped running and turned toward the officers with a metal object in his hand. Id. at 7. There is no similar dispute in the record here.

13

Hilaire is both legally and factually distinguishable from the present case.

For all of these reasons, the Estate has failed to demonstrate that this is an "obvious case" where the unlawfulness of Dennis's conduct is clear. As the Estate relies solely on that argument, and points to no "body of relevant case law" addressing the particular circumstances of this case, it has not borne its burden with respect to qualified immunity. Dennis is therefore entitled to qualified immunity on the excessive force claim.

Defendants' motion for summary judgment is accordingly **granted** as to Count I.

**B.    State-law Claims**

The remaining counts are state-law claims against Dennis for assault, battery, and negligent use of force. Dennis contends that he is entitled to municipal immunity on these claims under New Hampshire Revised Statutes Annotated ("RSA") § 507-B, et seq. Alternatively, Dennis asserts that his conduct is protected by official immunity. In the Estate's view, neither immunity doctrine applies.

The sole basis for this court's jurisdiction over the state-law claims is supplemental jurisdiction under 28 U.S.C. § 1367. But when, as here, all federal claims have been

14

dismissed, "it is an abuse of discretion for a district court to retain jurisdiction over state law claims unless doing so would serve the interests of fairness, judicial economy, convenience, and comity."  See Wilber v. Curtis, 872 F.3d 15, 23 (1st Cir. 2017) (citations and internal quotation marks omitted).  These factors weigh in favor of the court retaining jurisdiction over the state-law claims in this case.  Cadman elected to bring this action in this court, and it has been pending here for the better part of two years.  The parties have actively litigated the state claims in this venue, with the court having previously addressed those claims in its order on defendants' motion for judgment on the pleadings.  Moreover, both parties have fully briefed the state-law issues in their summary judgment filings, and neither party has asked the court to decline jurisdiction over the state claims should it dismiss the federal claims.  It is also far more convenient to have this court address these claims conclusively now, on the eve of trial, than for both parties to have to start anew in state court.  And finally, while the undersigned has declined to address municipal immunity in a different context on the basis that it presented a novel question of state law, see Sargent v. Town of Hudson, 2017 DNH 210, at 30-31 (Sept. 7, 2017), no similar concern exists here because the Estate has not raised the issue presented in that

case and the parties agree on the operative law. Thus, at least in the context of this case, the state-law claims do not present "a substantial question of state law that is better addressed by the state courts." Wilbur, 872 F.3d at 23 (citation omitted). The court will accordingly address the state-law claims on their merits.

The court turns first to municipal immunity. RSA 507-B:2 limits municipal liability to damages caused by "[the municipality's] fault or by fault attributable to it, arising out of ownership, occupation, maintenance or operation of all motor vehicles and all premises . . . ." These protections extend to claims against a municipal employee so long as he "was acting within the scope of his office and in good faith." RSA 507-B:4, IV. Though the New Hampshire Supreme Court ("NHSC") has not defined "good faith" in the context of the municipal immunity statute, the parties agree that Farrelly v. City of Concord, 168 N.H. 430 (2015), provides the relevant standard. In that case, the NHSC held that "to have immunity, [an] official must have acted within the scope of his official duties and have reasonably believed, at the time of the acts or omissions complained of, that his conduct was lawful." Farrelly, 168 N.H. at 442 (citation, brackets, and internal quotation marks omitted). Based on the parties' agreement, the

court assumes without finding that Farrelly provides the operative standard for "good faith."[7]

There is no dispute that Dennis was acting within the scope of his official duties when he shot Cadman. Thus, the sole question for the purposes of municipal immunity is whether Dennis reasonably believed, at the time of the shooting, that his conduct was lawful. "Reasonable belief" has both subjective and objective components: an officer is only entitled to immunity if he "subjectively believed that his . . . conduct was lawful and such belief was objectively reasonable." Id. at 444 (emphasis in original).

---

[7] The Estate brings both negligence and intentional tort claims. See Thompson v. Forest, 136 N.H. 215, 219 (1992) (noting that assault and battery are intentional torts). The NHSC has treated such claims differently for the purposes of municipal immunity. For negligence claims, the NHSC has required that there be "a nexus between the claim and the governmental unit's ownership, occupation, maintenance, or operation of a motor vehicle or premises." Dichiara v. Sanborn Reg'l Sch. Dist., 165 N.H. 694, 696-97 (2013). But for intentional torts, the NHSC has said that municipal immunity is coextensive with sovereign immunity "regardless of whether the claims have a nexus to motor vehicles or premises." McCarthy v. Manchester Police Dep't, 168 N.H. 202, 208 (2015). This distinction has no bearing on the present case, however, as the standard applied in Farrelly is the sovereign immunity standard that the NHSC has read into the municipal immunity statute for the purposes of intentional torts. See 168 N.H. at 442 (citing RSA 541-B:19, I(d), the sovereign immunity provision addressing intentional torts). Thus, this court need not conduct a separate analysis of the assault and battery claims.

17

To be subjectively unreasonable, an officer's conduct must be reckless or wanton.  Id. at 445.  Here, the Estate relies upon the affidavit of its expert, George Kirkham, to contend that Dennis's conduct recklessly violated established law enforcement policies and procedures.  The NHSC has defined recklessness as "conduct evincing disregard of or indifference to consequences under circumstances involving danger to life or safety of others, although no harm was intended." Kukesh v. Mutrie, 168 N.H. 76, 83 (2015) (internal quotation marks omitted).  Despite Kirkham's repeated use of the word "reckless," nothing in his affidavit suggests that Dennis's conduct approached this level of culpability.  Indeed, it is undisputed in the record that Dennis decided to shoot Cadman precisely because he believed Cadman posed a danger to life or safety of others.  Thus, no reasonable trier of fact could conclude that Dennis's actions were subjectively unreasonable under the circumstances.

An act is objectively reasonable unless its unlawfulness "would have been apparent to an objectively reasonable officer standing in the defendants' shoes." Id. at 446 (brackets and emphasis omitted) (quoting Cox v. Hainey, 391 F.3d 25, 31 (1st Cir. 2004)).  In contending that Dennis's conduct was objectively unreasonable here, the Estate appears to rely on the

same argument it raised with respect to the federal claim: that it was "obvious" under the circumstances that Dennis's conduct was unlawful.  As discussed above, the Estate has not pointed to any case law demonstrating that Dennis's conduct violated federal law.  The Estate similarly fails to cite any New Hampshire authority that would make it apparent to an objectively reasonable officer standing in Dennis's shoes that his conduct violated state law.  As such, no jury could find that Dennis's conduct here was objectively unreasonable.

In sum, no reasonable trier of fact could conclude that Dennis failed to act in "good faith" when he shot Cadman.[8]  As such, Dennis is entitled to municipal immunity on the state-law claims.  Having so concluded, the court need not reach defendants' alternative official immunity argument.

---

[8] In its order on defendants' motion for judgment on the pleadings, the court relied on two other decisions from this district that found that the NHSC "would define the term 'good faith' in RSA 507-B:4 as 'honesty in belief or purpose' and 'faithfulness to one's duty or obligation.'"  See doc. no. 17 at 6 (citing Maryea v. Baggs, No. 13-cv-318-LM, 2016 WL 1060226, at *6 (D.N.H. March 15, 2016); Crosby v. Strafford Cty. Dep't of Corr., No. 12-cv-383-LM, 2015 WL 3484912, at *6 (D.N.H. June 2, 2015)).  As the parties agree to an alternative definition of "good faith" for the purposes of the present analysis, the court need not address the state-law claims under the standard used in its earlier order. Nevertheless, the court would reach the same conclusion under that standard, as there is no evidence in the record suggesting that at the time of the shooting, Dennis lacked honesty in belief or purpose and was not faithful to his duties or obligations.

19

Defendants' motion for summary judgment is accordingly **granted** as to Counts III, IV, and V.

### IV.  CONCLUSION

In sum, the court concludes that Dennis is entitled to qualified immunity on the excessive-force claim and municipal immunity on the assault, battery, and negligent use of force claims.  The Estate concedes summary judgment on the failure to train and supervise claim.  Accordingly, defendants' motion for summary judgment (doc. no. 24) is **granted**.  The Clerk of Court shall enter judgment accordingly and close the case.

SO ORDERED.

_____
Andrea K. Johnstone
United States Magistrate Judge

January 29, 2018

cc: George T. Campbell, III, Esq.
    Brian J.S. Cullen, Esq.

20